UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STATE EX REL SUSAN BOGGS et al.,<br>PLAINTIFFS<br><br>v.<br><br>CITY OF CLEVELAND<br>DEFENDANT | )<br>)<br>)<br>) CASE 1:08-cv-2153<br>)<br>) JUDGE DAN A. POLLSTER<br>)<br>) |

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

NOW come the plaintiffs, and respond to defendant's Motion to Dismiss with this Brief in Opposition. Plaintiffs urge the court to deny defendant's motion, for reasons specified herein.

Respectfully,

  s/Charles Bennett
Charles Bennett (0070363)
4110 Cutler Avenue
Albuquerque, NM 87110
505-242-3333 (phone)
505-242-3322(fax)

## ARGUMENT

The issue before this court is whether all three plaintiffs were dismissed on the merits by a valid final entry in the prior litigation, *State ex. rel. Susan Boggs et al., v. City of Cleveland*, CV 02-484002, such that this action is barred by *res judicata*.

They were not, and defendant's motion to dismiss must be denied. This response to Defendant's Motion to Dismiss shall apply the elements of *res judicata* to each plaintiff individually.

### I. The Elements of *Res Judicata*.

The doctrine of *res judicata* requires four elements of proof:

(1) That the instant action involves the same parties as the earlier lawsuit;

(2) That there was a valid, final decision on the merits on the prior action by a court of competent jurisdiction.

(3) That the instant action arose out of the same transaction or occurrence that was the subject of the earlier lawsuit, and, finally,

(4) That the instant action could have been asserted in the previous action; <u>Grava v. Parkman Twp. (1995), 73 Ohio St. 3d 379, 653 N.E.2d 226, Davis v. Sun Oil Co., 148 F.3d 606, 611 (6th Cir. 1999)</u> *(per curiam); see also* <u>In re Fordu, 201 F.3d 693, 703-704 (6th Cir. 1999)</u>.

### II. APPLICATION OF THE DOCTRINE TO EACH PLAINTIFF

1) **THE INSTANT ACTION INVOLVED THE SAME PARTIES. AS THOSE OF THE PRIOR LAWSUIT.**

Three plaintiffs stand before the court. Fouad, Inc. is an Ohio corporation, which owns the property located at 24505 Barrett Road, in Olmsted Township. Plaintiff Fouad Rachid is the majority shareholder Fouad, Inc.

Plaintiff Susan Boggs is Mr. Rachid's spouse; she and her husband rent the property at 24505 Barrett Road in Olmsted Township from Fouad, Inc.

All three plaintiffs, as well as defendant City of Cleveland, were parties in the earlier case, *Boggs et al. v. City of Cleveland,* CV-02-484002. The first element of *res judicata* has been established.

### 2) PLAINTIFF FOUAD, INC. WAS DISMISSED BY A VALID FINAL DECISION ON THE MERITS BY A COURT OF COMPETENT JURISDICTION.

Plaintiff Fouad, Inc. was dismissed by the Court of Common Pleas on 2/03/2003 [**Exhibit A**]. The city argued, and the court agreed, that Fouad Inc. stated no claim for damages, because, as a corporation, it was not using the Property as a 'residence', and could not be disturbed by jet noise, dirt, or de-icing fuel. [**Exhibit B**]

The argument is suspect, because the City also argued that Boggs and Rachid, who *were* using the property as a residence, and who *were* having trouble sleeping because of airport operations, had no standing as non-owners to object. In other words, the City dismissed on the basis that 1) property owned by a corporation could not be the subject of a taking, because a corporation is a piece of paper that cannot experience annoyance, pain and suffering, or loss of enjoyment, and 2) anyone renting the property from that corporation has no standing to sue. The trial court agreed, and dismissed all three plaintiff's for failure to state a cause of action.

Plaintiffs appealed to the 8th Dist. Court of Appeals. The court of appeals held it had no jurisdiction to rule on the case, concluding that plaintiffs had been dismissed *without prejudice* by the trial court. [**Exhibit C**]. This entry was dated July 23, 2003.

The court of appeals sent the case back to the trial court. No activity occurred 10/15/2003, when the lower court produced another entry that dismissed the plaintiffs *with* prejudice. [**Exhibit D**]. There was no motion before the trial court to prompt this action, and the lower court gave no explanation for what amounted to a *reversal* of the Court of Appeals.

The validity of this Order is obviously questionable, because it was inconsistent with the appellate court's decision. In any case, Fouad, Inc. did not appeal the decision. The second element of res judicata is established as to Fouad, Inc., the owner of the property.

## 3. NIETHER SUSAN BOGGS NOR FOUAD RACHID WERE DISMISSED BY A DECISION ON THE MERITS IN THE PRIOR LITIGATION.

The trial court's dismissal affects Boggs and Rachid differently than it affects Fouad, Inc., because Boggs and Rachid were dismissed for a different reason than the corporate plaintiff. Fouad, Inc. was dismissed for failing to state a cause of action, under O.R.C.P. 12(B)(6). Boggs and Rachid, however, were dismissed on *standing,* because they did not own the property.

Dismissals on standing are not 'on the merits' for the sake of *res judicata*. <u>Asher v. City of Cincinnati (Dec. 23, 1999), Hamilton App. No. C-990345, 1999 Ohio App. LEXIS 6223</u>; *Metmor Financial, Inc. v. Slimmer* (May 17, 1996), Trumbull App. No. 95-T-5341, 1996 Ohio App. LEXIS 2003. 18A Wright, Miller & Cooper, *Federal Practice and Procedure* (2002) 189, Section 4438. The trial court's dismissal on the ground that

the Boggs and Rachid had no beneficial interest in the property in now way precludes this action by a real party in interest. *A-1 Nursing Care v. Florence Nightingale Nursing (1994), 97 Ohio App. 3d 623, 627, 647 N.E.2d 222*.

The issue with respect to Boggs and Rachid is how they could possibly possess standing now, when it was held they had no standing in 2003. This shall be discussed in the next section.

Regardless, Boggs and Rachid were not dismissed on the merits in the prior lawsuit, and the second element of *res judicata* has not been established as to them.

### 4. THE INSTANT ACTION ARISES OUT OF A NEW TRANSACTION, NAMELY, THE OPENING OF RUNWAYS 6L/24R AND 6R/24L

**A. Fouad, Inc. may proceed with its taking claim.**

The critical element in analyzing *res judicata* is whether or not the claims arose out of the same transaction or occurrence as the prior litigation. *Apseloff vs. Family Dollar Stores, Inc.* 2006 U.S. Dist. LEXIS 45779. A 'transaction or occurrence' is defined as "a 'common nucleus of operative facts." *Id.* at 382. To establish this element, the city has the burden of showing that the prior litigation arose out of the same facts as the instant case.

In fact a 'new' transaction has beset the plaintiffs since the 2003 dismissal. It conveys standing on Boggs and Rachid, and allows Fouad Inc. to re-file a claim of its own that would survive a 12(B)(6) challenge for failure to state a claim.

That transaction is the opening of new runways at Cleveland Hopkins International Airport.

The reason for this lawsuit is that the CLE's old runways, 5L/23R and 5R/23L, were expanded and re-designated "precision instrument runways" by the FAA, in a

project that was completed in August 2004, ten months after this lawsuit was dismissed. The reason for this expansion, according to Cleveland Port Control Dir. John Mok, was that CLE needed to "boost capacity for [yearly] runway takeoffs and landings to 525,000 from 368,000". **[Exhibit E]**. This is a forty percent increase in projected traffic. One hundred fifty-seven thousand additional takeoffs and landings are a new nucleus of operative fact that did not exist in 2003.

*Apseloff* is satisfied by the projected air traffic increase alone, but the way in which 5L/23R became 6L/24R is more important. Specifically, runway 6L/24R was stretched by a length of 3210 feet, which resulted in its southwest perimeter being moved two thousand feet closer to the property. **[Exhibit F, Recd. of Decision of FAA[1]]** The measured distance between the southwest edge of Runway 6l/24R and the property is approximately 3700 feet. Boggs and Rachid are a hazard to airport operations, and their residential use of the property directly violates FAA regulations, which provide maximum distances between residential properties and 'precision instrument' runways.

One such regulation, **Advisory Circular 150/5300-13 and FAA Order 5100.38A**, provides:

> ". . .[I]t is necessary to restrict the use of land to activities and purposes compatible with airport operations as well as to meet current and anticipated airport development. Such eligible areas may include
>
> (a)     for runways anticipated to serving turbojet aircraft or having an existing precision instrument runway, areas of land up to 1250 feet laterally from the runway centerline and extending 5000 feet beyond each end of the runway.

---

[1] The FAA's Record of Decision encompasses 128 pages, and has been redacted for relevance by the Plaintiff.

Two of CLE's Airport Layout Plans, on file with he FAA, provide evidence of this. These documents were previously filed with the court on October 30, 2008, **(Document 10, Exhibits 2 and 3)**. **Exhibit 2** shows the old ALP, before the expansion of 5L/23R. The property is not depicted on this ALP.

**Exhibit 3** shows the new ALP, which the City included in its grant application to get FAA funding for the project that resulted in this taking. Unlike the prior ALP, the ALP of **Exhibit 3** includes the property, 24505 Barrett Road, sitting 3700 feet southwest of the edge of 6L/24R, in violation of AC 150/5300.

The ALP was approved by the FAA and signed by City of Cleveland Attorney Jack Arnold on August 25, 2003, in an official 'Grant Agreement' drafted by the FAA. **[Exhibit G]**. The Grant Agreement, spelling out the duties of the City in exchange for FAA funding, provides that the ALP is a document that shows the "boundaries of the airport and all proposed additions thereto, together with the boundaries of all offsite areas owned or controlled by the sponsor for airport purposes. . ."

Thus the property, which lies in an 'offsite area' of the ALP, must be 'owned or controlled' by the City of Cleveland. Plaintiff Fouad Inc. can no longer sell this property, unless it wants to risk a lawsuit, because the City is required to own it. When the runway opened for business on August 4, 2004, the city took control of the property, and flights which in 2003 were a mere annoyance, were now flying 2000 feet closer to the home. Fouad Inc.'s real property asset on 24505 Barret Road in Olmsted Township declined in value, ostensibly to zero. Those damages are the result of the new transaction, the City's August 25, 2003 acceptance of acceptance of the FAA's Grant Agreement, dated August

25, 2003, and a new occurrence, the 2004 opening of the runway, which placed the property 2000 feet closer to 6L/24R.

Element 3 has not been established as to Fouad, Inc.

### B. Boggs and Rachid have standing to proceed with their claim as displaced persons.

The opening of runways 6L/24R and 6R/24L, as the result of the Grant Agreement between the City and the FAA, also confers standing on Boggs and Rachid, as "displaced persons". The Grant Agreement provides for compensation to such claimants, pursuant to the Uniform Relocation Assistance and Real Property Acquisition Act of 1970, 42 USC 4501, (Uniform Act). [**Exhibit G, part D, Sponsor Certification for Real Property Acquisition, No. 12.**] The Agreement requires the City to comply with the Uniform Act, which provides

> If displacement of persons, businesses, farm operations, or nonprofit organizations is involved, a relocation assistance program will be established. Displaced persons will receive general information in writing on the relocation program, notice of relocation eligibility, and a 90-day notice to vacate.

Under the provision, Boggs and Rachid (as well as Fouad, Inc. as a business operating out of the property) have standing to the City's failure to comply with its own Grant Agreement. To attain standing, Boggs and Rachid must demonstrate "that the challenged action has caused, or will cause, the appellant injury in fact, economic or otherwise, and that the interest sought to be protected is within the realm of interests regulated or protected by the statute or constitutional right being challenged." _Franklin Cty. Regional Solid Waste Mgt. Auth. v. Schregardus_ (1992), 84 Ohio App.3d 591, 599,

617 N.E.2d 761. Further, "the alleged injury must be concrete, rather than abstract or suspected; a party must show that he or she has suffered or will suffer a 'specific injury, even if slight, from the challenged action or inaction, and that this injury is likely to be redressed if the court invalidates the action or inaction.' " See *Johnson's Island Property Owners' Assoc. v. Schregardus* (June 30, 1997), Franklin App. No. 96APH10-1330, 1997 Ohio App. LEXIS 2839, quoting *State ex rel. Consumers League of Ohio v. Ratchford* (1982), 8 Ohio App.3d 420, 424, 8 Ohio B. 544, 457 N.E.2d 878.

Boggs, Rachid, and Fouad, Inc. have received no information from the City, nor any 90-day notice of the City's intent to purchase the Property, as it was required to do under its Grant Agreement and ALP. Under the Uniform Act, Boggs and Rachid now have standing to object to their 'concrete injury' as the result of this taking: the loss of enjoyment of their property, continuous, noise, filth, and continuous low level flights which shake the foundation of their home and are cracking its foundation. Since the expansion, trees are falling on the property's power lines. All of these allegations are contained in the Complaint in the instant case. The third element has not been established as to Boggs and Rachid.

### 5. THE INSTANT ACTION CONTAINS CLAIMS THAT COULD NOT HAVE BEEN BROUGHT UP BEFORE THE RUNWAYS OPENED.

The final element of the four is the most straightforward; the plaintiffs need only show that they have suffered injuries in fact that were not present before the runways opened.

Plaintiffs are ready to testify to each allegation in their complaint, which clearly spells out damages that were not present, not anticipated, and could not have been raised in their 2003 complaint. Those averments include:

**Averment 10**: Increased traffic from the 2004 completion of runways results in noise filth, and loss of enjoyment and use of the property (Boggs and Rachid)

**Averment 12**: Improvements made to the land, provided have been devalued since the expansion and increased air traffic of the runways. (Boggs, Rachid, and Fouad, Inc.)

**Averment 13**: In the month of November 2007, trees on the property were falling due to continued wind shear and wake vortex of the increased jet traffic since the expansion. One landed on the property's power lines, endangering the residents. Fouad Inc. cannot legally sell the property to a buyer, since the expansion of the runways. See, also the report of Marko Vovk, who has provided a preliminary expert opinion of the damages to the structure of the home as the result of continuing airport operations, **[Exhibit H]**.

**Averments 24-26**: The well on the property which serves as the property's sole source of drinking, bathing and irrigation water, has been contaminated by fuel and de-icing discharge originating at CLE and dumped into Rocky River. These contaminant's threaten the health of Boggs, Rachid, and their minor daughter, Nicole.

## CONCLUSION

Applying the four *res judicata* elements provided by <u>Grava v. Parkman Twp. (1995), 73 Ohio St. 3d 379, 653 N.E.2d 226</u>, defendants motion to dismiss must be denied. Plaintiffs concede that the same parties are before the court, and a valid final entry was entered against the corporate Plaintiff, Fouad, Inc. on the merits.

None of the remaining elements of res judicata have been established against any plaintiff. Plaintiffs urge the court to deny defendant's motion to dismiss

Respectfully Submitted,


___s/Charles Bennett_____
Charles Bennett (0070363)
4110 Cutler Avenue
Albuquerque, NM 87110
505-242-3333
505-242-3322 (fax)