**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **STATE OF OHIO ex rel. Susan Boggs, et al.,** ) | Case No.  **1:08 CV 2153** |
| ) | |
| Relators, ) | Judge **Dan Aaron Polster** |
| ) | |
| vs. ) | |
| ) | **MEMORANDUM OF OPINION** |
| **CITY OF CLEVELAND,** ) | **AND ORDER** |
| ) | |
| Respondent. ) | |

Before the Court are the following two fully briefed motions:

- "Respondent's Motion to Dismiss" (**ECF No. 17**), and

- "Plaintiffs' Relators' Motion to Supplement Their Brief in Opposition to Defendant's Motion to Dismiss" (**ECF No. 24**).

For the reasons to follow, the Court **GRANTS** the Motion to Supplement (ECF No. 24), **GRANTS** the Motion to Dismiss (**ECF No. 17**).  The case is, thus, **DISMISSED WITH PREJUDICE**.

**I.**

In 1995, Relator Fouad, Inc. purchased property located at 24505 Barrett Road in Olmsted Township, Ohio ("the property"). (ECF No. 1-1 ("Compl.") ¶¶ 7, 8.)  Fouad, Inc. purchased the property as an investment and residence for Relators Susan Boggs, who provided the down payment for the property, and her husband, Fouad Rachid, a principal shareholder of

Fouad, Inc. (Id. ¶¶ 8, 12.) Fouad, Inc. leases the property to Rachid and Boggs who are responsible for maintaining and improving the property. (Id. ¶ 10.) The multi-acre property contains a primary residence and several outbuildings, including a horse barn. (Id. ¶ 7.) The property is located directly below the flight path of two runways of the Cleveland Hopkins International Airport ("the Airport" or its designation "CLE"). It is worth noting that the two runways, previously called 5L-23R and 5R-23L, are presently called 6L-24R and 6R-24L respectively. (See ECF No. 18-7 at 4 n. 1.)

### A.     The First Case

In October 2002, Relators filed a class action complaint in the Cuyahoga County, Ohio Common Pleas Court against the City of Cleveland, which owns and controls operations at the Airport. (See ECF No. 17-2 ("First Compl.").) Therein, Relators alleged the following facts.

The original north/south runway at the Airport was shut down in 1976 pursuant to an agreement between Cleveland, Middleburg Heights, Berea and Fairview Park. (First Compl. ¶ 7.) Thereafter, air traffic was redistributed so that over 90% of all flights use the northeast/southwest runways, 5L-23R and 5R-23L, for landing and takeoff. (Id.) "Commencing in the early 1990's, and most dramatically since 1995, after Plaintiffs-Relators purchased their home on Barrett Road, there has been a significant change in the type and frequency of flights, flight patterns and nighttime operations, rendering Plaintiffs-Relators property incompatible with residential use." (Id. ¶ 8.) Since that time, noise levels, dirt, unburned aircraft fuel and deicing fluid have interfered with Relators' ability to sleep, relax, do anything outdoors and "enjoy their otherwise peaceful rural horse property," and have destroyed the value of Relators' property as a residence. (Id. ¶ 11.)

>Of particular relevance to the motion to dismiss, Relators allege:
>
>21.     Cleveland is completing construction of the expansion which was the subject of the 2000 [Environmental Impact Statement] and Master Plan ("Expansion").  A key feature of the Expansion, is the widening of the distance between runways 5R-23L and 5L-23R, and the extension of both runways thousands of feet closer to Plaintiffs-Relators and members of the class.  Because landing aircraft descend along a fixed glide angle, moving the end of these runways closer to Plaintiffs-Relators and members of the class means all landing aircraft will be closer to the ground over their property than they are now.  Upon information and belief, they will be about 200 feet lower one mile from touchdown, and will be skimming the treetops as they pass over Plaintiffs-Relators' residence.
>
>22.     It is undeniable that Plaintiffs-Relators' property will be in a noise contour above 75 Ldn as soon as the runways are completed. . . . Their property will be only about 500 hundred feet from the runway protected zone ("RPZ") of runway 5R-23L, and about 1,200 feet from the RPZ of runway 5L-23R.  An RPZ is required by Federal Law to be an object-free zone in which there are virtually no compatible land uses, most especially residential uses.

(First Compl. at 8-9 (omitting citation to exhibit).)  Relators concluded that the current and expected level and frequency of flights over the property constituted a taking of private property for public use, without compensation, in violation of Article I, Section 19 of the Ohio Constitution.  As such, they filed a mandamus action seeking to compel the City to initiate appropriation proceedings to purchase Relators' property and the property of their class members (i.e., similarly situated property owners in Olmsted Township, Olmsted Falls, Berea, Brookpark and Cleveland).  (Id. ¶ 1.)

On November 21, 2002, the City moved to dismiss the complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The state court initially dismissed the claim on February 3, 2003 in the following perfunctory order:

>Plaintiff's [sic] motion to dismiss complaint for failure to state a claim upon which relief can be granted filed on 11-21-02 is granted.  Final.

(Def. Mot. at 3 (citing certified copy of docket in the previous action (*State ex rel. Susan Boggs, et al. v. City of Cleveland*, Cuyahoga County Common Pleas Court case no. CV 02 484002) (Ex. B)).)  On July 23, 2003, the 8th District Court of Appeals issued the following ruling:

> Sua Sponte, this appeal is dismissed for lack of a final appealable order.  The trial court dismissed appellants' complaint without prejudice; therefore, no decision on the merits of this action was rendered.

(Pl. Resp. to Mot., Ex. C.)  Three months later, on October 15, 2003, the trial court issued another perfunctory order:

> Plaintiff's motion to dismiss complaint for failure to state a claim upon which relief can be granted filed 11-21-02, is granted.  Complaint is dismissed with prejudice.  Final.

(Pl. Resp. to Mot., Ex. D.)  Plaintiffs did not appeal this merits dismissal.

### B.  The Second Case

In August 2008, Relators filed the instant complaint in the Cuyahoga County, Ohio Common Pleas Court against the City, again seeking a mandamus order requiring the City to compensate them for the taking their property due to Airport operations.  (ECF no. 1-1 ("Second Compl.").)  Relators brought this complaint, absent class allegations, under the same provision of the Ohio Constitution alleged to be violated in the First Case.  This time, however, Relators also brought a claim under the Fifth Amendment of the United States Constitution (i.e., a federal claim against the City for taking Relators' property for public use without just compensation).  Because the complaint asserted a federal claim, the City removed the case to federal court where it was assigned to me.  (ECF No. 1.)  Relators now allege the following facts.

> The City relocated a runway currently known as 6L/24R at CLE in a phased construction project undertaken about the year 2000, and further expanded in August 2004.

(Second Compl. ¶ 2.)

> In 2007, Phase II of the expansion project extended the runway denoted as 6L24R to 11,255 feet. This expansion enabled 6L24R to accommodate larger aircraft with heavier fuel loads, as of the filing of this claim expansion at CLE is still commencing.

(Id. ¶ 4.)

> The City applied for and received a grant from the Federal Aviation Administration (FAA) to assist the City in financing and completing the runway project. In its application, the City agreed to abide by all Federal laws and regulations promulgated by the FAA for the protection of people on the ground, including Boggs, and the Rachids.

(Id. ¶ 6.)

> As tenants of Fouad, Inc., Boggs and the Rachids have an interest in the Property because they live there. They are displaced persons because of the actions of the City described herein.

(Id. ¶ 11.)

> CLE's expanded runways, denoted as 6L24R and 6R 24L, in violation of federal laws and Federal Aviation Administration (FAA) regulations. Runway 6R 24L is currently undergoing an expansion which will further interfere with Relator's use and enjoyment of the property.

(Id. ¶ 13.) Relators generally allege that increased traffic from the "expanded runways" has resulted in intolerable noise, filth and general disruption, and has interfered with the use and enjoyment of the property. (Id. ¶ 14.) They allege that they have been exposed to toxins contained in the pollution from increased air traffic of the expanded runways, which has contaminated their well water and will require medical monitoring. (Id. ¶¶ 33-39.) Relators allege that Fouad, Inc. cannot legally sell the property as residential real estate, because of the proximity of the expanded runways at CLE. Consequently, Relators bring this second action in

mandamus to force the City to exercise eminent domain, appraise the property, and pay just compensation for it.

The City has filed a Motion to Dismiss, arguing that Relators are barred from bringing the Second Case on the basis of *res judicata*. Relators respond that the instant action is not barred because Boggs and Fouad's claim was not adjudicated on the merits, and the instant action did not arise out of the same transaction or occurrence as the earlier lawsuit. The City contends that the Second Case does in fact arise out of the same transaction or occurrence as the First Case (i.e., the expansion of runways at the Airport), and that Relators' failure to appeal the dismissal with prejudice of the First Case precludes them from bringing this one.

**II.**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The court must view the complaint in a light most favorable to the non-moving party, taking all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 487, 488 (6th Cir. 2009).

The City asks the Court to dismiss this case pursuant to the doctrine of *res judicata*. It has long been established that "a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies." *In re Fordu*, 201 F.3d 693, 702 (6th Cir. 1999) (inner

quotations and citations omitted). "When a federal court is asked to give preclusive effect to a state court judgment, the federal court must apply the law of the state in which the prior judgment was rendered in determining whether and to what extend the prior judgment should be given preclusive effect." *Id.* (citations omitted).

Under Ohio law, "[a] valid final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. *Grava v. Parkman Twp.*, 73 Ohio St.3d 379 (syllabus) (1995) (citations omitted). In order to obtain dismissal based on *res judicata*, a defendant must show that:

(1)   the instant action involves the same parties as the earlier action;

(2)   there was a valid, final decision on the prior action by a court of competent jurisdiction;

(3)   the instant action arose out of the same transaction or occurrence that was the subject of the earlier action; and

(4)   the instant claims could have been asserted in the previous action.

*Id.* The *Grava* court held, with respect to the fourth element, that *res judicata* will bar the action or claim even if it is based on a different legal ground, or would emphasize different elements of the facts. *Id.*, 73 Ohio St.3d at 382-83.

### III.

### A.

It is undisputed that the City has established the first element of *res judicata*. That is, the instant action involves the same parties as the earlier lawsuit. (See Mot. at 6; Opp'n Br. at 2-3.)

**B.**

The City contends that the second element (i.e., a valid, final decision on the merits on the prior action by a court of competent jurisdiction) is established because, in Ohio, an involuntary dismissal under Rule 12(b)(6) is a dismissal with prejudice unless the court states otherwise in its dismissal order. (Motion at 6 (citing Civ. R. 41(B)(3)). When, as here, a trial court's order of dismissal does not specify it was without prejudice, it is deemed a dismissal on the merits. (Id. (citation to Ohio cases omitted).) The record shows, however, that the Eighth District Court of Appeals construed the trial court's perfunctory, unspecific dismissal order as one without prejudice, and *sua sponte* dismissed the appeal for lack of a final appealable order. On remand, the trial court issued yet another perfunctory order dismissing the case with prejudice – and Relators failed to appeal this ruling. As such, the Court finds that the unappealed dismissal with prejudice of the First Case bars subsequent litigation of claims arising out of the same occurrence that were, or could have been, raised in the First Case.

Relators question the validity of the merits dismissal in the First Case generally. To understand the trial court's unexplained ruling, the Court must review the City's arguments in the first motion to dismiss and assume that the trial court dismissed the case based on those arguments. Therein, the City argued that, in order to state a takings claim and seek mandamus requiring the City to purchase the taken property, the claimant had to be the owner of the property or someone who had a legally recognized interest in that property. (See generally ECF No. 18-3.) The City argued that neither Boggs nor Rachid would be entitled to any compensation for the alleged taking because they did not own or have any legally recognized interest in the property; therefore, Boggs and Rachid lacked standing to bring a mandamus action

requiring the City to purchase the property. (Id.) The City then argued that Ohio recognizes a claim that airport operations adversely affecting property may amount to a taking; however, Relators basically complained that frequent, low-flying aircraft over the property interfered with and destroyed the usefulness of the property as a residence. Because Fouad, Inc. is a corporation that does not use the property as a residence, it has failed to state a taking claim.

Relators characterize the trial court's ruling as "suspect" because it appears that no one could bring a mandamus action against the City. (Opp'n Br. at 3.) Despite their suspicions, however, Relators concede that the dismissal of Fouad, Inc. was a merits dismissal because it was the owner of the property and it did not appeal the decision. (Id. at 4.) Therefore, it is undisputed that the City has established the second element with respect to Fouad, Inc.

Relators argue, however, that the merits dismissal of Boggs and Rachid in the First Case is invalid because they were dismissed for lack of standing which, they argue, is typically a dismissal without prejudice. (Id. at 4 (citing *Asher v. City of Cincinnati*, Hamilton App. No. C-990345, 1999 Ohio App. LEXIS 6223; *Metmor Fin., Inc. v. Slimmer*, Trumbull App. No. 95-T-5341, 1996 Ohio App. LEXIS 2003 (May 17, 1996); 18A Wright, Miller & Cooper, *Federal Practice and Procedure*, 189, Section 4438 (2002)).) Relators' cases stand for the general proposition that a dismissal for lack of standing is not a dismissal on the merits. The City counters that, even if the trial court should have dismissed the claims against Boggs and Rachid without prejudice, Relators' failure to appeal the merits dismissal renders that judgment final in any event. (Mot. at 4 (citing *Mason v. GFS Leasing and Mgmt.*, Cuyahoga App. No. 79536 2002 WL 192097, at *3 (Feb. 7, 2002)).) The court agrees.

In *Mason*, the appeals court found that a trial court erred when it granted the dismissal of wrongful discharge claims asserted in an earlier case on the basis of *res judicata*. *Mason*, 2002 WL 192097, at *3. However, it also found that the aggrieved party's failure to appeal that erroneous judgment rendered the decision of the trial court final and *res judicata* barred the assertion of claims arising from the same discharge in a subsequent lawsuit. *Id.* This only makes sense because the time to challenge an erroneous judgment is in that case, not a subsequent one. Accordingly, the Court concludes that the City has established the second *res judicata* element (i.e., a valid, final decision on the merits by a court of competent jurisdiction) with respect to Boggs and Rachid as well as Fouad, Inc.

## C.

The third question is whether the Second Case arose out of the same transaction or occurrence that was the subject of the First Case. Relators contend that the runway expansion is a "new transaction;" therefore, *res judicata* does not apply. The City argues that Relators made explicit references to the runway expansion in the First Case. The relevant provisions of the First Case allege:

> 21.     Cleveland is completing construction of the expansion which was the subject of the 2000 [Environmental Impact Statement] and Master Plan ("Expansion"). A key feature of the Expansion, is the widening of the distance between runways 5R-23L and 5L-23R, and the extension of both runways thousands of feet closer to Plaintiffs-Relators and members of the class. Because landing aircraft descend along a fixed glide angle, moving the end of these runways closer to Plaintiffs-Relators and members of the class means all landing aircraft will be closer to the ground over their property than they are now. Upon information and belief, they will be about 200 feet lower one mile from touchdown, and will be skimming the treetops as they pass over Plaintiffs-Relators' residence.
>
> 22.     It is undeniable that Plaintiffs-Relators' property will be in a noise contour above 75 Ldn as soon as the runways are completed. . . . Their property will be

>only about 500 hundred feet from the runway protected zone ("RPZ") of runway 5R-23L, and about 1,200 feet from the RPZ of runway 5L-23R. An RPZ is required by Federal Law to be an object-free zone in which there are virtually no compatible land uses, most especially residential uses.

(First Compl. at 8-9 (omitting citation to exhibit).)

According to Relators, the critical element in analyzing *res judicata* is whether or not the claims arose out of the same transaction or occurrence as the prior litigation. (Opp'n Br. at 5 (citing *Apseloff v. Family Dollar Stores, Inc.*, No. 1:06 CV 133. 2006 WL 1881283, at *2 (S.D. Ohio Jul. 6, 2006)).)  Specifically, Relators contend that,

>in fact a 'new transaction has beset the plaintiffs since the 2003 dismissal. It conveys standing on Boggs and Rachid, and allows Fouad Inc. to re-file a claim of its own that would survive a 12(B)(6) challenge for failure to state a claim.
>
>That transaction is the opening of new runways at Cleveland Hopkins International Airport.
>
>The reason for this lawsuit is that the CLE's old runways, 5L/23R and 5R/23L were expanded and re-designated "precision instrument runways" by the FAA, in a project that was completed in August 2004, ten months after this lawsuit was dismissed. The reason for this expansion, according to Cleveland Port Control Dir. John Mok, was that CLE needed to "boost capacity for [yearly] runway takeoffs and landings to 525,000 from 368,000". [Exhibit E]. This is a forty percent increase in projected traffic. One hundred fifty-seven thousand additional takeoffs and landing are a new nucleus of operative fact that did not exist in 2003.
>
>*Apseloff* is satisfied by the projected air traffic increase alone, but the way in which 5L/23R became 6L/24R is more important. Specifically, runway 6L/24R was stretched by a length of 3210 feet, which resulted in its southwest perimeter being moved two thousand feet closer to the property. [Exhibit F, Recd. of Decision of FAA] The measured distance between the southwest edge of Runway 6L/24R and the property is approximately 3700 feet. Boggs and Rachid are a hazard to airport operations, and their residential use of the property directly violates FAA regulations, which provide maximum distances between residential properties and 'precision instrument' runways.

(Opp'n Br. at 5-6.)

The exhibit cited in their brief, however, shows that the expansion Relators complain about today was approved by the FAA in November 2000. Exhibit F is the FAA's "Record of Decision for Proposed Replacement Runway, Runway Extension and Associated Development at Cleveland Hopkins International Airport, Cleveland, Ohio" issued in November 2000. Therein, the FAA provides:

> This Record of Decision (ROD) provides final agency determinations and approvals for those Federal actions by the Federal Aviation Administration (FAA), and related actions by the National Aeronautics and Space Administration (NASA), and Federal Highway Administration (FHWA). These actions are necessary to allow for the enhancements to safety, the reduction of aircraft delays, the increase in peak period capacity, and the enhancement of the human environment. <u>The proposed development includes construction and operation of a replacement Runway 5L/23R; construction of a 3,210-foot extension to Runway 5R/23L</u>; development of associated ancillary facilities; and implementation of the air traffic actions for the proposed development as well as air traffic actions and land use mitigation actions recommended in the 2000 Final Part 150 Study Update at [CLE]. This action will also allow for the transfer of land between NASA and the City of Cleveland for the construction of replacement Runway 5L/23R and allow the FHWA to relocate Brookpark Road to allow aircraft approaches in low visibility to replacement Runway 23R.

(ECF No. 18-7, at 4.) The FAA points out that Runways 6L/24R and 6R/24L are the new names for previous Runways 5L/23R and 5R/23L, respectively. (Id. at 4 n. 1.)

The record thus shows that the expansion of the Airport in 2002, when Relators filed the First Case, was approved by the FAA in November 2000. The record also shows (in a document Relators provided entitled "Future Airport Layout Plan") that the dimensions of the present-day runways were planned as early as January 15, 1999. (See ECF No. 10-4.) Thus, the Court finds that the completed expansion complained of in the Second Case , despite the expansion's division into project phases, is the very same transaction or occurrence giving rise to the taking claim and mandamus action asserted in the First Case. Relators' allegation and argument that

Boggs and Rachid now have standing because they are "displaced persons" does not change the simple fact that the dimensions of the expanded runways and the increased air traffic were not only anticipated but expected in 2002 when Relators filed the First Case. Relators argue that Fouad, Inc. can now bring a taking claim against the City because the corporation cannot sell the property. This claim is based on Relators' argument that the City is required to purchase the property pursuant to various federal regulations, FAA Advisory Circulars and Orders. Thus, Fouad, Inc. would be in contravention of the law if it tried to sell the City's alleged property. None of the cited regulations, Circulars and Orders show that the City is required to purchase the property. In fact, the Court asked Relators' counsel to provide the particular Circulars and Orders they referenced, or to inform the Court's staff of a way to access those particular Circulars and Orders. Relators did neither. Regardless, the record shows that the third *res judicata* element has been established.

## D.

The fourth and final question is whether the instant claims could have been asserted in the previous action. Relators argue that the noise, filth, pollution, devaluation of property and loss of enjoyment that they experience today could not have been anticipated in the First Case. (Opp'n Br. at 10.) The City counters that they raised the same allegations in the First Case. The Court finds that the allegations in the Second Case, while more detailed, were in fact asserted as expected injuries from the expansion of the runways and operations in the First Case. And it is undisputed that Relators could have alleged a federal taking claim as well as a state taking claim in the First Case. Because the factual allegations were asserted, and the federal taking claim

could have been asserted, in the First Case, the Court concludes that the fourth *res judicata* factor has been established.

## IV.

Based on the foregoing, the Court hereby **GRANTS** the Motion to Supplement (**ECF No. 24**), **GRANTS** the Motion to Dismiss (**ECF No. 17**).  Accordingly, the case is hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

*/s/Dan Aaron Polster     October 12, 2009*
**Dan Aaron Polster**
**United States District Judge**