IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRCT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SUSAN BOGGS, *et al.*, | ) CASE NO. 1:08-CV-02153-JDG |
| Plaintiffs/Relators, | ) |
| vs. | ) MAGISTRATE JUDGE |
| | ) JONATHAN D. GREENBERG |
| CITY OF CLEVELAND, *et al.*, | ) |
| Defendants/Respondents. | ) **MEMORANDUM OF OPINION &** |
| | ) **ORDER** |

This matter is before the Court on Defendant Traci Clark's Motion for Judgment on the Pleadings. (Doc. No. 60.) For the following reasons, the Court GRANTS the Motion for Judgment on the Pleadings and DISMISSES the claims against Defendant Clark.

## I. Factual and Procedural Background

In August 2008, Plaintiffs filed a "Complaint for Writ of Mandamus to Commence Appropriation Proceedings" against the City of Cleveland ("City") under the Fifth Amendment to the United States Constitution, the Ohio Constitution, and other applicable laws, seeking compensation for the alleged taking of their property as a result of operations at Cleveland Hopkins International Airport. (Doc. Nos. 26, 32.) *See also Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011). Because Plaintiffs asserted a federal claim, the City removed this case to this Court on September 8, 2008. (Doc. No. 1).

On March 31, 2009, the City moved to dismiss the case. (Doc. No. 17.) On October 13, 2009, the Court granted the motion on *res judicata* grounds based on an earlier class action complaint Plaintiffs filed against the City. (Doc. No. 26.) Plaintiffs appealed the Court's decision to the Sixth Circuit. (Doc. No.

1

29.) On appeal, the Sixth Circuit reversed, finding Plaintiffs' claims based upon runway expansions in 2004 and 2007 "could not have been raised in the 2002 Action and are premised on a new transaction or occurrence distinct from the subject matter of the 2002 Action"; therefore, *res judicata* did not apply. *Boggs*, 655 F.3d at 524. The Sixth Circuit then remanded the case back to this Court for further proceedings. *Id.*

After remand, Plaintiffs and the City stipulated to a dismissal without prejudice in October 2011 so Plaintiffs could pursue administrative claims before the Federal Aviation Administration ("FAA"). (Doc. No. 40.) The Stipulated Order of Dismissal Without Prejudice states, "The Relators and the City agreed to toll the statute of limitations on the Fifth Amendment and Ohio Constitutional claims beginning October 25, 2011 until such time as the Relators have exhausted their administrative remedies." (*Id.*)

On March 20, 2019, Plaintiffs filed a Notice of Exhaustion of Administrative Remedies. (Doc. No. 41.) On April 10, 2019, the Court held a telephonic conference with counsel, plaintiff Susan Boggs, and City representative Traci Clark to determine how to proceed with the case given the lapse of seven years. (Non-document entry dated April 10, 2019.) The Court ordered Plaintiffs to discuss the matter with the City, and if the matter could not be resolved, Plaintiffs were to file a new case or an amended complaint "based on 2019 conditions, as opposed [to] 2008 conditions." (*Id.*)

On October 15, 2019, Plaintiffs filed their First Amended Complaint. (Doc. No. 46.) On November 1, 2019, the Court formally reopened the case. (Doc. No. 48.) On December 2, 2019, the parties filed their Joint Consent to Exercise of Jurisdiction by a United States Magistrate Judge, and this case was then transferred to the undersigned. (Doc. Nos. 49, 50.) *See also* non-document entry dated December 3, 2019.

**II.     Claims Alleged in First Amended Complaint**

In Plaintiffs' First Amended Complaint ("FAC"), they assert claims under the Fifth and Fourteenth Amendments of the United States Constitution, Article I, Section 19 of the Ohio Constitution, and 42 U.S.C.

§ 1983. (Doc. No. 46.) Plaintiffs also assert violation of Ohio law with respect to easements offered by Defendants, although the Complaint does not specify which laws Defendants violated.[1] (*See id.* at 8-9.)

In a section titled "Facts in Support of All Claims," Plaintiffs allege the following: Defendants expanded runways 6L24R and 6R24L at the Airport pursuant to grants from the FAA. Expansion of 6L24R began in January 2001 and was completed in August 2004. Expansion of 6R24L began in 2007 and was completed in 2008. As a result of these expansions, 6L24R is 9000 feet long and 6R24L is 9956 feet long. After the expansion of 6L24R, Plaintiffs' home sits 3437 feet from the southwest edge of the runway. Plaintiffs own and reside in the home and enjoy 500 feet of airspace above ground level under federal law. Since at least 2018, the Airport has scheduled 156 daily flight departures and a similar number of arrivals per day. Traffic at the Airport has increased by 4.5% in 2019 and is expected to increase further. The expansions of the runways result in low flying flights over the Plaintiffs' home. Dozens of times a day, flights takeoff or land "well below 500 feet above ground level." The reason for these low flying takeoffs and landings "is that the landing system [D]efendants mandate on 6L24R and 6R24L is an Instrument Landing System (ILS)." All aircraft landing at the Airport follow the same glidepath, which is set by Defendants. "The ILS requires aircraft to descend or ascend into or from the runways at a 3.0 degree angle (3-degree regulation) from the ground for landing or taking off on both runways." These low flying flights "amount to a continuous trespass of the property, and each trespass individually and negatively affects the

---

[1] In their response in opposition to Defendant Clark's Motion for Judgment on the Pleadings, Plaintiffs maintain the Complaint "alleges [Clark's] continuous failure to abide by Ohio law, [ORC 163.02-22 *et seq.*]" (Doc. No. 61 at 6.)

3

Plaintiffs' use and enjoyment of the Home," "have continued unabated since the runways were completed, and will continue for the indefinite future." (Doc. No. 46 at ¶¶ 18-22, 26-34, 37-39.)

Plaintiffs further allege at all times material to the Complaint that the expansion of the runways and execution of all flight operations at the Airport was under Defendants' control. According to the FAC, all Defendants exercised their control over the Airport, including expanding the runways and setting glide paths for landings and takeoffs under the color of law. Specifically, "Defendants failed and/or refused to exercise eminent domain over Plaintiffs' property under color of law, thereby effecting the taking of the property without due process in violation of the 5th and 14th Amendments of the United States Constitution, and Article I, Sec. 19 of the Ohio Constitution." (*Id.* at ¶¶ 23-25.)

With respect to Defendant Clark, the Complaint alleges that as Deputy Chief, Planning & Engineering, at the Airport, Clark "oversaw Defendants' sound insulation program, whereby defendants would offer to install insulated doors and windows to homeowners, including Plaintiffs, who were affected by [the Airport's] operations." (Doc. No. 46, ¶¶ 9-10.) Plaintiffs allege "[t]he offer was illegally contingent on homeowners' [sic] surrendering an avigation easement to the City, in perpetuity." (*Id.* at ¶ 10.) Plaintiffs maintain Clark "acted at all times under color of state law, custom or usage, and Plaintiffs bring this action against her in her personal capacity." (*Id.* at ¶ 11.) Further, Plaintiffs maintain "Clark's and City Defendants' joint operation of [the Airport] are proprietary functions, such that all are liable for the wrongs and omissions described herein." (*Id.* at ¶ 14.) However, the Complaint then asserts that "City Defendants

have the power of eminent domain over the Home, and have refused to execute that power, prompting this lawsuit." (*Id.* at ¶ 15.)

### III. Analysis

#### A. Standard of Review

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings. *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly*, 550 U.S. at 555–556, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct.

1937, 173 L.Ed.2d 868 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (quoting *Twombly*, 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

Generally, in ruling on a 12(c) or 12(b)(6) motion, "the court may only consider documents attached to, incorporated by, or referred to in the pleadings," because if they stray outside those parameters, the motion must be treated as seeking summary judgment under Rule 56. *Whittiker v. Deutsche Bank Nat. Tr. Co.*, 605 F. Supp. 2d 914, 924 (N.D. Ohio 2009). Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in plaintiff's complaint and are central to the claims. *Weiner v. Klais and Co.*, 108 F.3d 86, 89 (6th Cir. 1997). Therefore, they may be considered without converting a Rule 12(b)(6) motion to dismiss to a motion for summary judgment. *Id.* The Sixth Circuit has applied the same analysis to determine what information may be considered without converting a Rule 12(c) motion for judgment on the pleadings to one for summary judgment. *Savage v. Hatcher*, 109 F. App'x 759, 760 (6th Cir. 2004) (citing *Weiner* regarding limiting a federal court's review to the "pleadings" when considering motion for judgment on the pleadings); *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007) (legal

standard for adjudicating a Rule 12(c) motion is the same as for a Rule 12(b)(6) motion). In adopting this standard, the Sixth Circuit noted that "a plaintiff is under no obligation to attach to his complaint documents upon which his action is based. However, a defendant may introduce certain pertinent documents if the plaintiff fails to do so. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Weiner*, 108 F.3d at 89 (citations omitted).

**B.     Application**

### 1. Plaintiffs' Claims Against Clark Under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Sec. 19 of the Ohio Constitution

Defendant Clark argues Plaintiffs' claims asserted against her under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Sec. 19 of the Ohio Constitution are time-barred. (Doc. No. 60 at 5-7.) In addition, Defendant Clark asserts Plaintiffs' claims under the Fifth Amendment cannot be asserted against her as an individual defendant. (*Id.* at 8-9.)

Plaintiffs respond that "the First Amended Complaint against Ms. Clark fully satisfies [*Doner v. Zody*, 130 Ohio St.3d 446 (2011)], as it alleges her continuous failure to abide by Ohio law, [ORC 163.02-22 *et seq.*]." (Doc. No. 61 at 2, 6.) Plaintiffs maintain that, "[t]o the extent that our First Amended Complaint makes allegations that Clark violated state law and, with Defendants, *effected a taking of this property*, the Boggs First Amended Complaint against Defendant Clark is timely." (*Id.* at 6) (emphasis added). Plaintiffs purport to "concede" Clark's third argument but appear to misunderstand Clark's argument as they then state: "The First Amended Complaint makes no allegations that Ms. Clark individually took the property." (*Id.* at 8.)

The Court notes the only allegations asserted in the Complaint regarding the Fourteenth Amendment are allegations involving the failure of the Defendants to exercise eminent domain and "effecting the

7

'taking'" of Plaintiffs' home, also in violation of the Fifth Amendment and Article I, Section 19 (Eminent Domain) of the Ohio Constitution. (Doc. No. 1 at ¶¶ 25, 53, 63, 67.) But as this District has made clear, "[a] takings claim cannot be asserted against an individual defendant." *Jamison v. Angelo*, No. 4:10CV2843, 2012 WL 4434152, at *7 (N.D. Ohio Sept. 24, 2012) (citing *Coles v. Bd. of Park Commis.*, No. 3:08CV2968, 2009 WL 2922036, at *1 (N.D. Ohio Sept. 8, 2009)). *See also Vicory v. Walton*, 730 F.2d 466, 467 (6th Cir. 1984) ("Plaintiff may not maintain a constitutional cause of action against these defendants who neither have nor claim the eminent domain power, nor any power similar to it. The wrongful 'taking,' detention or theft by an individual of the property of another is not a constitutional 'taking' as that term has been defined by the fifth amendment and commonly understood by the courts.") (citation omitted).

In addition:

> The Ohio Constitution does not create a private cause of action for monetary damages. *Davet v. City of Cleveland,* No. 1:03CV1323, Doc. No. 43 at 17 (N.D. Ohio Mar. 4, 2004) ("Ohio law is devoid of a statute akin to 42 U.S.C. § 1983, which enables direct causes of action for monetary damages for federal Constitutional violations. Furthermore, although some states imply a cause of action against both individuals and governments, for monetary damages for violations of state constitutions, Ohio is not among them.") (citing *Provens v. Stark Cnty. Bd. of Mental Retardation & Developmental Disabilities,* 64 Ohio St.3d 252, 594 N.E.2d 959 (1992)); *see also, Sanford v. Cnty. of Lucas, Ohio,* 3:07 CV 3588, 2009 WL 723227, at *7–8 (N.D. Ohio Mar. 16, 2009) (citations omitted).

*Jamison*, 2012 WL 4434152, at *11 n.6.

Therefore, Plaintiffs' claims against Defendant Clark under the Fifth and Fourteenth Amendments and Article I, Section 19 (Eminent Domain) as they relate to the "taking" of Plaintiffs' home are DISMISSED.

### 2. Plaintiffs' Claims Against Clark Under Ohio Law Regarding Avigation Easements

In Section V of the FAC, titled "The Offer of Sound Insulation in Exchange for an Avigation Easement," Plaintiffs assert Clark, acting under color of law in her individual capacity, violated Ohio law. (Doc. No. 46 at ¶¶ 54-63.) As noted *supra*, in their response in opposition to Clark's Motion for Judgment on the Pleadings, Plaintiffs stated the FAC alleged Clark violated O.R.C. § 163.02-22 *et seq.* (Doc. No. 61 at 6.)

In their briefing, the parties focus on the four-year statute of limitations set forth in O.R.C. § 2305.09(E). (Doc. Nos. 60, 61, 62.) Plaintiffs tie this statute of limitations to Clark's conduct with respect to the allegedly illegal easements. (Doc No. 61 at 3-6.) Clark does not dispute the application of O.R.C. § 2305.09(E) in this context or advance an alternate statute of limitations in her reply. (Doc. No. 62 at 4-7.) For purposes of resolving Clark's Motion for Judgment on the Pleadings, then, the Court accepts the parties' argument that the four-year statute of limitations set forth in § 2305.09(E) applies to these claims.[2]

Plaintiffs assert in their opposition that the Court must accept all factual allegations as true, and "[t]hus if the Compliant [sic] makes allegations that Ms. Clark continued to do (or failed to do) something on the City's 'own land' which caused continuing damages to Plaintiff's property, and her conduct continued unabated, the statute of limitations remains tolled . . . ." (Doc. No. 61 at 4.) Plaintiffs then point

---

[2] The Ohio Supreme Court left open which statute of limitations applies in mandamus actions following the enactment of § 2305.09(E). *Painesville Mini Storage, Inc. v. Painesville*, 124 Ohio St.3d 504, 2010-Ohio-920, 924 N.E.2d 357, 358 (Ohio 2010) ("Regardless of whether the R.C. 2305.07 six-year statute of limitations or the R.C. 2305.09(E) four-year statute of limitations applies to appellant's takings claim, the claim is barred. See *State ex rel. Nickoli v. Erie MetroParks,* 124 Ohio St.3d 449, 2010-Ohio-606, 923 N.E.2d 588, ¶ 30; see also *State ex rel. R.T.G., Inc. v. State,* 98 Ohio St.3d 1, 2002-Ohio-6716, 780 N.E.2d 998, ¶ 30–31 (a case decided prior to the enactment of R.C. 2305.09(E) in which the court held that the six-year limitation period of R.C. 2305.07 was appropriate for mandamus actions brought to compel appropriation proceedings).") (mandamus action brought to compel city to commence appropriation proceeding for alleged taking).

9

to a number of averments in the FAC in support, including their allegation that "Defendants collectively, and Traci Clark individually, have repeatedly offered Plaintiffs sound insulated door and windows in exchange for an air easement." (*Id.*) Defendants respond: (1) Plaintiffs did not plead Clark violated ORC 163.02-22 *et seq*. with particularity; (2) Clark "did not, and does not, have the authority or ability to commence appropriation proceedings of the Property;" and (3) "Plaintiffs have not averred in any colorable fashion that Defendant Clark continually trespassed on or caused continual damage to the Property." (Doc. No. 62 at 5.)

While a complaint "need not contain 'detailed' factual allegations, its '[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true.'" *Franklin v. FirstEnergy Corp.*, No. 5:11-CV-02444, 2012 WL 2130978, at *2 ((N.D. Ohio June 12, 2012) (quoting *Twombly*, 550 U.S. at 555). Further, "A court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Plaintiffs failed to plead any actions by Clark (or any other defendants, for that matter) relating to the easements that fall within the statute of limitations.[3] Plaintiffs allege, "Defendants collectively, and Traci Clark individually, have repeatedly offered Plaintiffs sound insulated doors and windows in exchange for an air easement. (Exhibit 5)." (Doc. No. 46 at ¶ 54.) But Exhibit 5 to the FAC is a letter dated August 7, *2002* – well outside the statute of limitations – and states, "Based on this information, I am *reaffirming* the City's willingness to mitigate the noise through Mrs. Boggs's participation in the Residential Sound Insulation Program." (Doc. No. 46, Ex. 5) (emphasis added). The fact that Plaintiffs allege a "taking" continues to the present does not change this analysis as, for the reasons discussed above, such claims cannot be asserted against Clark as an individual defendant.

---

[3] This is so whether the applicable statute of limitations is four or six years. *See* n.2, *supra*.

Therefore, even construing the FAC in a light most favorable to the Plaintiffs, any right to relief against Defendant Clark within the statute of limitations on these grounds is pure speculation at best. As a result, these claims against Clark are DISMISSED.

### 3. Plaintiffs' Claims Against Clark Under § 1983

Clark also argues Plaintiffs' claims against her under § 1983 are time-barred. (Doc. No. 60 at 7-8.) Although Clark states the FAC "is overall deficient in pleading claims asserting violations under 42 U.S.C. § 1983 as against all Defendants to the point that said claims may also be facially deficient," (*id.* at 7) (footnote omitted), she does not develop this argument further and therefore such argument is waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones.'") (citations omitted). Plaintiffs respond that the applicable statute of limitations under § 1983 is four years, and as they alleged a "continuing trespass," "the statute does not begin to run until the Defendant's [sic] control over the situation ceases." (Doc. No. 61 at 7.)

"Section 1983 does not create rights itself; it authorizes a person to bring a claim against a person who, acting under color of law, violates one's rights established elsewhere, that is "by the Constitution and laws" of the United States." *Estate of Fluegge v. City of Wayne*, No. 19-10175, 2020 WL 999009, at *6 (E.D. Mich. Mar. 2, 2020) (citing *Cavin v. Michigan Dep't of Corr.*, 927 F.3d 455, 460 (6th Cir. 2019)). To assert a claim under § 1983, Plaintiffs "must establish that: (1) a person acting under color of state law (2) deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Dunikowski v. Ohio Dept. of Rehab. & Correction*, No. 1:18 CV 2576, 2019 WL 2717954, at *2 (N.D. Ohio Jun. 28, 2019) (citing *Gomez v. Toledo,* 446 U.S. 635, 640 (1980)).

The FAC, in pleading jurisdiction and venue, states, "This action arises under the 5th and 14th Amendments of the Constitution and laws of the United States, including Article III, Section I of the United States Constitution and is brought pursuant to 42 U.S.C. §§ 1983 and 42 U.S.C. § 1988." (Doc No. 46 at ¶ 16.) Section 1983 appears only two other places in the FAC: in an allegation that all defendants are "persons" under the statute and in an allegation of damages. (*Id.* at ¶¶ 12, 75.) The only constitutional violations asserted in the Complaint consist of allegations involving the Defendants "effecting the 'taking'" of Plaintiffs' home, in violation of the Fifth and Fourteenth Amendments of the United States Constitution. (Doc. No. 46 at ¶¶ 25, 53, 63, 67.) For the reasons discussed above, "takings" claims cannot be asserted against Clark as an individual defendant. Therefore, the § 1983 claims in the FAC asserted against Clark are DISMISSED.

## IV. Conclusion

For all the reasons set forth above, the Court GRANTS the Motion for Judgment on the Pleadings and DISMISSES the claims against Defendant Clark.

Date: April 2, 2020            *s/ Jonathan Greenberg*
                                             Jonathan D. Greenberg
                                             United States Magistrate Judge