IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRCT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SUSAN BOGGS, *et al.*, | CASE NO.  1:08-CV-02153-JDG |
| Plaintiffs/Relators, | |
| vs. | MAGISTRATE JUDGE JONATHAN D. GREENBERG |
| CITY OF CLEVELAND, | |
| Defendant/Respondent. | **MEMORANDUM OF OPINION & ORDER** |

This matter is before the Court on Defendant/Respondent's Motion for Summary Judgment (Doc. No. 88) and Plaintiffs/Relators' Motion for Summary Judgment (Doc. No. 89).  For the following reasons, the Court GRANTS Defendant/Respondent's Motion for Summary Judgment and DENIES Plaintiffs/Relators' Motion for Summary Judgment as to Plaintiffs/Relators' federal law claims and dismisses those claims with prejudice.  The Court declines to exercise supplemental jurisdiction over the Plaintiffs/Relators' remaining state law claims and REMANDS this case back to state court.[1]

---

[1] "A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996) (citing *Transcontinental Leasing, Inc. v. Michigan Nat'l Bank of Detroit*, 738 F.2d 163, 166 (6th Cir. 1984)).  A court's decision to exercise supplemental jurisdiction depends on "'judicial economy, convenience, fairness, and comity.'"  *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed."  *Id.* (citing *Carnegie-Mellon*, 484 U.S. at 350 n.7) (additional citations omitted).  As the Sixth Circuit has explained, "Supplemental jurisdiction is a 'doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner

1

### I. Factual and Procedural Background

In August 2008, Plaintiffs filed a "Complaint for Writ of Mandamus to Commence Appropriation Proceedings" against the City of Cleveland ("City") under the Fifth Amendment to the United States Constitution, the Ohio Constitution, and other applicable laws, seeking compensation for the alleged taking of their property as a result of operations at Cleveland Hopkins International Airport. (Doc. Nos. 26, 32.) *See also Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011). Because Plaintiffs asserted a federal claim, the City removed this case to this Court on September 8, 2008. (Doc. No. 1).

On March 31, 2009, the City moved to dismiss the case. (Doc. No. 17.) On October 13, 2009, the Court granted the motion on *res judicata* grounds based on an earlier class action complaint Plaintiffs filed against the City. (Doc. No. 26.) Plaintiffs appealed the Court's decision to the Sixth Circuit. (Doc. No. 29.) On appeal, the Sixth Circuit reversed, finding Plaintiffs' claims based upon runway expansions in 2004 and 2007 "could not have been raised in the 2002 Action and are premised on a new transaction or occurrence distinct from the subject matter of the 2002 Action"; therefore, *res judicata* did not apply. *Boggs*, 655 F.3d at 524. The Sixth Circuit then remanded the case back to this Court for further proceedings. *Id.*

After remand, Plaintiffs and the City stipulated to a dismissal without prejudice in October 2011 so Plaintiffs could pursue administrative claims before the Federal Aviation Administration ("FAA"). (Doc. No. 40.) The Stipulated Order of Dismissal Without Prejudice states, "The Relators and the City agreed to toll the statute of limitations on the Fifth Amendment and Ohio Constitutional claims beginning October 25, 2011 until such time as the Relators have exhausted their administrative remedies." (*Id.*)

---

that most sensibly accommodates a range of concerns and values.'" *Basista Holdings, LLC v. Ellsworth Twp.*, 710 F. App'x 688, 695 (6th Cir. 2017) (quoting *Carnegie-Mellon*, 484 U.S. at 350)).

On March 20, 2019, Plaintiffs filed a Notice of Exhaustion of Administrative Remedies. (Doc. No. 41.) On April 10, 2019, the Court held a telephonic conference with counsel, plaintiff Susan Boggs, and City representative Traci Clark to determine how to proceed with the case given the lapse of seven years. (Non-document entry dated April 10, 2019.) The Court ordered Plaintiffs to discuss the matter with the City, and if the matter could not be resolved, Plaintiffs were to file a new case or an amended complaint "based on 2019 conditions, as opposed [to] 2008 conditions." (*Id.*)

On October 15, 2019, Plaintiffs filed their First Amended Complaint. (Doc. No. 46.) On November 1, 2019, the Court formally reopened the case. (Doc. No. 48.) On December 2, 2019, the parties filed their Joint Consent to Exercise of Jurisdiction by a United States Magistrate Judge, and this case was then transferred to the undersigned. (Doc. Nos. 49, 50.) *See also* non-document entry dated December 3, 2019.

On January 16, 2020, Defendant Traci Clark filed a motion for judgment on the pleadings as to the claims asserted against her. (Doc. No. 60.) Plaintiffs filed an opposition to the motion (Doc. No. 61), to which Defendant Clark replied. (Doc. No. 62.) On April 2, 2020, the Court granted Defendant Clark's motion for judgment on the pleadings and dismissed the claims against her. (Doc. Nos. 65-66.)

On December 15, 2020, the City filed a motion for summary judgment on the following grounds: (1) All § 1983 claims arising from the 2004 runway extension are barred by the two-year statute of limitations; (2) Plaintiffs failed to establish a genuine dispute of material fact as to whether the 2008 runway extension caused a taking; (3) Plaintiffs Nicole Rachid, Fouad Rachid, and Susan Boggs do not have legal standing to bring this action under federal or state law; (4) Plaintiffs are not entitled to relief under the Uniform Relocation Act; and (5) Fouad, Inc. failed to establish a genuine issue of material fact as to whether the runway expansions substantially interfered with its right of ownership of the property. (Doc. No. 88.)

That same day, Plaintiffs filed a motion for summary judgment "on the issue of liability in this case," asserting that the only factual issue to be presented to the jury was "how much of the home has been taken by the city, what that portion is worth, and if there is any 'uneconomic remnant' remaining that the City has acquired as well." (Doc. No. 89 at 10) (citations omitted).

On December 30, 2020, Plaintiffs filed an opposition to the City's motion for summary judgment. (Doc. No. 91.) On January 13, 2021, the City filed its reply in support of its motion for summary judgment. (Doc. No. 93.) On January 14, 2021, the City filed its opposition to Plaintiffs' motion for summary judgment. (Doc. No. 94.) On January 29, 2021, Plaintiffs filed their reply in support of their motion for summary judgment. (Doc. No. 95.)

## II. Analysis

### A. Standard of Review

Summary judgment is governed by Federal Rule of Civil Procedure 56, which provides:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). The purpose of summary judgment is to determine if there is a need for a trial due to genuine factual issues which need resolution. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If, based on all the available proof, a reasonable jury could only find for one party at trial, then a trial is unnecessary, and the Court may enter a judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986*). See also Barrett v. Lucent Technologies*, 36 F. App'x 835, 840 (6th Cir.

2002) ("Summary judgment is appropriate when there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law.").

The moving party has the initial burden of demonstrating there is no genuine issue of material fact. The moving party may meet this burden by establishing the non-moving party lacks evidence to support an essential element of their case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989.) Conversely, if it is the moving party who carries the burden of proof for a claim, they may establish no genuine issue of material fact by setting forth evidence which would result in a directed verdict at trial. *See Calderone v. U.S.*, 799 F.2d 254, 259 (6th Cir. 1986). *See also Kassouf v. U.S. Liability Co.*, Case No. 1:14CV2656, 2015 WL 5542530, at *3 (N.D. Ohio Sept. 18, 2015).

Once the moving party meets this burden, the non-moving party must then present evidence which establishes genuine factual issues which require a trial. *Celotex Corp.*, 477 U.S. at 325. The non-moving party may not rest "upon the mere allegations of their pleadings nor upon general allegations that issues of fact exist." *Shell v. Lautenschlager*, Case No. 1:15CV1757, 2017 WL 4919206, at *1 (N.D. Ohio Oct. 31, 2017). Indeed, the non-moving party must support their position with "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). *See also Celotex Corp.*, 477 U.S. at 324. The non-moving party must "present more than a scintilla of evidence" to support their position. *See Garza v. Norfolk S. Ry. Co.*, 536 F. App'x 517, 519 (6th Cir. 2013).

When reviewing the evidence, the court must view all the evidence and inferences in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). If after analyzing the body of

5

evidence presented by both parties, the Court finds no reasonable jury could find in favor of the non-moving party, summary judgment must be entered. *Kassouf*, 2015 WL 5542530, at *3.

However, an unusual situation is created when cross motions for summary judgment are filed. As the Sixth Circuit has explained, the reviewing court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001) (citing *Taft Broadcasting Co. v. U.S.*, 929 F.2d 240, 241 (6th Cir. 1991)). Accordingly, "if it is possible to draw inferences in either direction, then both motions for summary judgment should be denied." *Champion Foodservice, LLC v. Vista Food Exchange, Inc.*, Case No. 1:13-cv-1195, 2016 WL 4468001, at *4 (N.D. Ohio Aug. 24, 2016) (citing *B.F. Goodrich Co.*, 245 F.3d at 592-593.).

**B.     Application**

   **1.   Statute of Limitations for Claims Brought Pursuant to 42 U.S.C. § 1983**

The parties filed a joint stipulation setting forth the following chronology of construction to the two runways at issue in this case. (Doc. No. 23.)

In January 2001, construction began on runway 6L/24R. (*Id.*) On December 2002, runway 6L/24R opened at an initial length of 7,000 feet. (*Id.*) In January 2003, construction restarted on runway 6L/24R. (*Id.*) In August 2004, runway 6L/24R opened at a final length of 9,000 feet. (*Id.*) The Court shall refer to the construction of runway 6L/24R as "the 2004 runway extension."

In May 2007, construction began on runway 6R/24L. (*Id.*) On August 1, 2008, Plaintiffs filed this lawsuit (*id.*), and on September 8, 2008, the Defendants removed the case to federal court. (Doc. No. 1.)

6

In December 2008, runway 6R/24L opened at a final length of 9, 956 feet. (Doc. No. 23.) The Court shall refer to the construction of runway 6L/24R as "the 2008 runway extension."

Since the Sixth Circuit decided *Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989), the Sixth Circuit has consistently held that the statute of limitations for 42 U.S.C. § 1983 civil rights actions in Ohio is set forth in O.R.C. § 2305.10, which requires actions for bodily injury to be filed within two years after accrual. *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) (citing *LRL Properties v. Portage Metro Housing Auth.*, 55 F.3d 1097, 1105 (6th Cir. 1995), *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 519-20 (6th Cir. 1997)).

Plaintiffs argue that under *McNamara v. City of Rittman*, 472 F.3d 633, 637 n.1 (6th Cir. 2007), "'any takings actions' brought after the amendment of 2305.09 [March 2, 2004], enjoy a four-year statute of limitation." (Doc. No. 91 at 10) (footnote omitted). The Court rejects Plaintiffs' reading of *McNamara* for several reasons. First, the language in *McNamara* upon which Plaintiffs rely was dicta;[2] the parties in that case agreed the applicable statute of limitations for the § 1983 claims was two years. 473 F.3d at 637. Second, even after *McNamara*, the Sixth Circuit has continued to rely on a two-year statute of limitations for § 1983 claims. *See, e.g.*, *3799 Mill Run Partners, LLC v. City of Hilliard, Ohio*, 839 F. App'x 948, 950 (6th Cir. 2020); *Basista Holdings, LLC*, 710 F. App'x at 691; *Ohio Midland, Inc. v. Ohio Dept. of Transp.*,

---

[2] Dicta is not binding on this Court. *Preterm-Cleveland v. McCloud*, 994 F.3d 512, 531 (6th Cir. 2021) ("We recognize that this section is little more than a separate concurrence and, being dicta, creates no controlling law. *See Richmond Health Facilities v. Nichols*, 811 F.3d 192, 201 n.8 (6th Cir. 2016) (quoting Black's Law Dictionary, 10th ed. 2014, for the definition of dicta)."). *See also Michigan Spine and Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.*, 758 F.3d 787, 792 (6th Cir. 2014) ("The holding of a decision, which has precedential effect, is to be contrasted with dicta, which does not have precedential effect. 'Obiter dictum,' 'something said in passing' in Latin, is a 'judicial comment while delivering a judicial opinion, but one that is unnecessary to the decision before the court and therefore not precedential.' Black's Law Dictionary (9th ed.2009).").

7

286 F. App'x 905, 911 (6th Cir. 2008). Third, as this Court has previously found in response to an identical argument:

> In opposition, plaintiffs assert that the four-year statute of limitations in Ohio Rev. Code § 2305.09 "applie[s] to takings claims under Ohio law[.]" (Pl.Opp'n at 466, citing *McNamara v. City of Rittman*, 473 F.3d 633, 637 n.1 (6th Cir. 2007)[24].) But § 1983 claims are not taking claims; they are personal injury claims. *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) ("section 1983 claims [are] best characterized as tort actions for the recovery of damages for personal injuries and federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought.") (citing *Wilson*, 471 U.S. at 275-76; *Owens v. Okure*, 488 U.S. 235, 109 S. Ct. 573, 102 L.Ed. 2d 594 (1989); *Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989)). In *Banks*, the court of appeals noted that it has "squarely rejected attempts to get around" the two-year statute of limitations. *Id.* (citing *LRL Props. v. Portage Metro Housing Auth.*, 55 F.3d 1097, 1105 (6th Cir. 1995) (rejecting application of Ohio Rev. Code § 2305.09); *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 519-20 (6th Cir. 1997) (same)).
>
> Accordingly, a two-year statute of limitations applies and, based on unrefuted demolition dates identified in Table P-1 and shown parenthetically below, all § 1983 claims relating to the following properties are time-barred because they accrued outside the two-year period preceding the filing of the complaint . . . .

*Woods Cove, III, LLC v. City of Akron*, No. 5:16-CV-1016, 2018 WL 4104186, at *8–9 (N.D. Ohio Aug. 29, 2018).

In a footnote, this Court further explained:

> Plaintiff's reliance upon dicta in *McNamara* suggesting a four-year statute of limitations for "takings actions brought after 2004" is likely misplaced. In *Wilson v. Garcia*, 471 U.S. 261, 274, 105 S. Ct. 1938, 85 L.Ed. 2d 254 (1985), the Court expressly rejected any suggestion that "the choice of the statute of limitations [should] depend upon the particular facts or the precise legal theory of each [§ 1983] claim[.]" The Court "conclude[d] that [§ 1983] is fairly construed as a directive to select, in each State, the *one* most appropriate statute of limitations for all § 1983 claims." *Id.* at 275 (emphasis added).

*Id.* at *8 n.24.

8

Plaintiffs also argue that because this Court applied the four-year statute of limitations in O.R.C. § 2305.09(E) in ruling on the § 1983 claims asserted against Defendant Clark in resolving her motion for judgment on the pleadings, the same statute of limitations must apply here, as the § 1983 claims Plaintiffs assert against the City are the same as those asserted against Clark. (Doc. No. 91 at 7.) However, Plaintiffs misread the Court's decision. The Court granted the motion for judgment on the pleadings on § 1983 claims against Clark because takings claims, upon which Plaintiffs' § 1983 claims were based, cannot be maintained against an individual. *Boggs v. City of Cleveland*, Case No. 1:08CV2153, 2020 WL 1640390, at \*\*4-6 (N.D. Ohio Apr. 2, 2020). The Court applied the four-year statute of limitations—which the parties agreed applied—to Plaintiffs' *state law* claims against Clark. *Id.* The Court did not address the merits of the parties' arguments with respect to the statute of limitations applicable to § 1983 claims. *Id.*

Therefore, the Court finds the applicable statute of limitations to Plaintiffs' § 1983 claims is two years.

Federal law, not state law, determines when a § 1983 claim accrues. *A to Z, Inc. v. City of Cleveland*, 281 F. App'x 458, 460 (6th Cir. 2008). Under federal law, "the statute begins to run when plaintiffs knew or should have known of the injury which forms the basis of their claims." *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001) (citations omitted). A court must focus its inquiry on the harm incurred, and not the plaintiff's knowledge of underlying facts giving rise to the harm. *Id.* at 501 (citation omitted). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* (internal quotation marks and citation omitted).

Plaintiffs concede the 2004 runway expansion was completed in August 2004. (Doc. No. 23; Doc. No. 91 at 4.) Plaintiffs further concede their § 1983 claims accrued in 2004. (Doc. No. 91 at 5) ("The Sixth

Circuit Court of Appeals has already established that Plaintiff's § 1983 claims accrued upon the opening of 6L in 2004.") (quoting and citing *Boggs v. City of Cleveland*, 655 F.3d 516, 523-24 (6th Cir. 2011)).

Plaintiffs argue that "this is a continuous taking, with no statute of limitations," because flights continue over the home at less than 500 feet above ground level "to this day" and noise on the property will exceed 65 day night level through 2024. (Doc. No. 91 at 11-12.) Plaintiffs purport to rely on a Sixth Circuit case that "analyzed 'permanent' versus 'continuing' takings in a recent case involving chemical discharge": *Elmer v. S.H. Bell Co.*, 127 F. Supp. 3d 812 (N.D. Ohio 2015). (*Id.* at 11.) Plaintiffs also rely on a Supreme Court of Ohio decision, *Sexton v. City of Mason*, 117 Ohio St. 3d 275 (Ohio 2008). (*Id.* at 12.) However, *Elmer*—a district court opinion—involved claims of trespass, private nuisance, negligence, public nuisance, statutory nuisance, nuisance *per se*, and medical monitoring, none of which Plaintiffs asserted in their FAC.[3] Moreover, *Elmer* did not involve a takings claim. *Elmer*, 127 F. Supp. 3d at 818. *Sexton*, likewise, was a trespass case that did not involve a takings claim. 117 Ohio St. 3d 275. Furthermore, as set forth above, it is federal law, and not state law, that determines when a § 1983 claim accrues.

Plaintiffs also rely on *McNamara* for the proposition that "a two-year limitations period will not bar all actions for all time, as in certain cases where there is a *continuing violation* which inflicts continuing and accumulating harm (Discussed in the next section)." (Doc. No. 91 at 10) (emphasis in original.) Again, however, Plaintiffs rely on dicta; the Sixth Circuit expressly declined to address the continuing violation

---

[3] Although the FAC refers to "trespasses" and "continuing trespasses," such references are within the context of Plaintiffs' takings claims. (*See* Doc. No. 46 at ¶¶ 30, 38, 42.) Plaintiffs' FAC does not contain any claims of trespass under state law. (*See* Doc. No. 46.) In fact, the FAC is entitled "FIRST AMENDED COMPLAINT BROUGHT UNDER 42 USC 1983 FOR THE TAKING OF PROPERTY, MANDAMUS AND INVERSE CONDEMNATION." (*Id.*)

10

issue as it was not properly raised before the district court, had not been presented to the state courts, and was not ripe for review. 473 F.3d at 639.

"Courts have been extremely reluctant to apply [the continuing violation doctrine] outside of the context of Title VII." *LRL Properties*, 55 F.3d at 1105 n.3.

The Court finds the Sixth Circuit case of *Ohio Midland* to be analogous here. In *Ohio Midland*, plaintiffs, the owners of a bridge over the Ohio River, sued to compel the Ohio Department of Transportation to either rebuild the bridge ramp it tore down in 1991 or pay plaintiffs damages resulting from the lack of a ramp. 286 F. App'x at 906. The Sixth Circuit determined that because plaintiffs' amended claims accrued more than two years before plaintiffs filed suit and did not fall into the "continuing violation" category, plaintiffs' amended claims were all time-barred by the statute of limitations. *Id.* at 910. The Sixth Circuit found as follows:

> The plaintiffs' theory of taking is that a taking occurred because the economic value of the bridge was destroyed. The economic value of the bridge was destroyed because the Ohio ramp was not rebuilt, thus effectively closing the bridge. *See* Proposed Amended Complaint ¶¶ 19–20 ("Such closure prevented any use of the Bridge and substantially reduced or destroyed the fair market value of the residue of the Bridge, and constitutes a taking...."). Under the plaintiffs' theory, then, the relevant time that plaintiffs would be "on notice" of the taking is the time they were on notice that they would not be receiving a new ramp. *See Ruff v. Runyon,* 258 F.3d 498, 500 (6th Cir.2001) (holding that the statute of limitations begins to run under federal law "when plaintiffs knew or should have known of the injury which forms the basis of their claims"); *Kuhnle Bros., Inc. v. County of Geauga,* 103 F.3d 516, 520 (6th Cir.1997) ("In determining when the cause of action accrues in section 1983 actions, [courts] have looked to what event should have alerted the typical lay persons to protect his or her rights.").
> 
> * * *
> 
> The plaintiffs also seek to avoid the conclusion that their amended claims are time-barred by arguing that the statute of limitations was tolled because the

11

> ODOT defendants' actions or inactions constituted a "continuing violation" that recurred every second the violation was not stopped. This argument is also unpersuasive. Contrary to the plaintiffs' assertions, the fact that Proctor and Spain did not reverse ODOT's early–1990s decisions does not fit into the "continuing violation" framework.
>
> Courts have allowed the statute of limitations to be tolled when: (1) "there is some evidence of present [prohibited] activity giving rise to a claim of a continuing violation" and "at least one of the forbidden ... acts occurs within the relevant limitations period"; or (2) there is a "longstanding and demonstrable policy" of the forbidden activity. *See Trzebuckowski v. City of Cleveland,* 319 F.3d 853, 857 (6th Cir.2003). This court has distinguished between "continuing violations" and "continuing effects of prior violations," however, and clarified that "the present effects of past discrimination ... do not trigger a continuing violations exception." *Tenenbaum v. Caldera,* 45 Fed.Appx. 416, 419 (6th Cir.2002) (citing *Dixon v. Anderson,* 928 F.2d 212, 216 (6th Cir.1991) (abrogated on other grounds)). And, as the district court noted, courts have been "extremely reluctant to apply [the continuing violations] doctrine outside of the context of Title VII." *LRL Props. v. Portage Metro Hous. Auth.,* 55 F.3d 1097, 1105 n. 3 (6th Cir.1995).
>
> The instant case is not one in which a series of repeated constitutional violations occurred. Rather, one alleged constitutional violation occurred in the early 1990s that simply was not reversed. As the district court explained, the ODOT defendants' alleged "continued decision" not to rebuild the ramp was merely a manifestation of the alleged prior taking. The plaintiffs' amended claims therefore do not fit within the continuing-violations framework.
>
> That this case does not fall into the "continuing violations" framework also makes sense. If this court were to accept the plaintiffs' theory that a taking is continuous until it is reversed, then all takings would constitute "continuing violations," tolling the statute of limitations. There would effectively be no statute of limitations, and the plaintiffs' theory could easily be extended to many other violations outside of the takings context. This is not the law.

*Id.* at 910-11, 912–13.

The 2008 runway expansion is of no consequence to the statute of limitations for Plaintiffs' § 1983 claims.  First, as noted above, Plaintiffs concede their § 1983 claims accrued in August 2004. (Doc. No. 91 at 5.)  Second, Plaintiffs further concede "[[t]he 2007 completion of Runway 6R is not at issue in this

12

response; nothing is on the record involving damages from the expansion of runway 6R]." (*Id.* at 6.) (*See also* Boggs Dep., 94:22-95:4.) Plaintiffs' expert also testified his analysis focused only on Runway 6L and not Runway 6R. (Kamman Dep., 95:25-96:13.)

Plaintiffs failed to file the instant case until August 2008, four years after completion of the 2004 runway expansion. Therefore, the Court finds the statute of limitations bars Plaintiffs' § 1983 claims and GRANTS Defendant's motion for summary judgment on Plaintiffs' § 1983 claims. The Court DENIES Plaintiffs' motion for summary judgment on their § 1983 claims.

The Court declines to exercise supplemental jurisdiction over Plaintiffs' claims asserted under the Ohio Constitution and state law. 28 U.S.C. § 1367(c)(3).

**2. Claims Pursuant to the Uniform Relocation Act**

The City argues Plaintiffs are not entitled to relief under the Uniform Relocation and Real Property Acquisition Act ("URA") for three reasons: (1) the URA does not create a legal cause of action and does not create any rights that can be asserted under § 1983; (2) courts have held that the Administrative Procedures Act ("APA") is the exclusive remedy for URA claims; and (3) Plaintiffs' demand for relief under the URA pursuant to a writ of mandamus is inappropriate because this Court lacks jurisdiction under 28 U.S.C. § 1361 to compel a state defendant, such as the City, to take such action. (Doc. No. 88 at 24-25.)

Plaintiffs provide no meaningful response in their opposition to the City's motion for summary judgment. (Doc. No. 91.) The City argues in its reply in support of its motion for summary judgment that Plaintiffs waived any such argument by failing to respond and thus is entitled to summary judgment on this claim. (Doc. No. 93 at 6-7.)

In their own motion for summary judgment, Plaintiffs assert that certain provisions of the URA apply and mandate condemnation, and that the City agreed to abide by the URA. (Doc. No. 89 at 17-18.) In its brief in opposition, the City argued, "Defendant has briefed the issue of whether Plaintiffs established any right to recovery under URA in their Motion for Summary Judgment. Plaintiffs did not substantively address this argument in their opposition; and the claim is waived." (Doc. No. 94 at 18) (citation omitted). In reply, Plaintiffs assert they "have waived nothing with respect to the URA," and maintain that their URA claims remain unripe until Plaintiffs receive an Order of Mandamus as "[t]he City has issued no Notice of Intent and the Plaintiffs are not displaced under either statute." (Doc. No. 95 at 16.)

Setting aside the waiver and ripeness issues, Plaintiffs cannot raise URA claims as an independent cause of action. *Consumers Power Co. v. Costle*, 468 F. Supp. 375, 380 (E.D. Mich. 1979) ("The Uniform Relocation Assistance Act makes it very clear that Congress intended to set forth guidelines rather than to create rights of the sort giving rise to a legal cause of action."), *aff'd*, 615 F.2d 1147 (6th Cir. 1980). *See also, e.g., Clear Sky Car Wash LLC v. City of Chesapeake, Va.*, 743 F.3d 438, 444 (4th Cir. 2014) ("At bottom, we hold that the URA, in imposing policies on the heads of federal and state agencies in §§ 4651 and 4655, creates no individually enforceable rights. Therefore, Clear Sky lacks any basis for a private action to remedy violations of those sections."). Nor can Plaintiffs raise URA claims under § 1983:

> For URA claims, the Administrative Procedures Act ("APA") is the exclusive remedy; therefore, such claims are not cognizable under § 1983. *See Ackerley Communications of Fla., Inc. v. Henderson,* 881 F.2d 990, 993 (11th Cir.1989) (APA is exclusive remedy for alleged violations of the URA); *Rhodes v. City of Chicago,* 516 F.2d 1373, 1378 (7th Cir.1975) (federal courts lack jurisdiction over actions seeking enforcement of policies outlined in 42 U.S.C. § 4651 *et seq.*).

*Meacham v. Woolford*, Case No. 5:06 CV 2447, 2007 WL 1087609, at *2 (N.D. Ohio Apr. 9, 2007). *See also, e.g., Beachy v. Bd. of Aviation Comm'rs of City of Kokomo*, 699 F. Supp. 742, 747 (S.D. Ind. 1988) ("Clearly, Congress did not intend in the Relocation Assistance Act to create rights actionable under section 1983.") This Court has previously held the sole remedy for URA claims is the APA, and Plaintiffs failed to allege any APA claim in the FAC. (Doc. No. 46.) Therefore, the Court GRANTS the City's motion for summary judgment and DENIES Plaintiffs' motion for summary judgment as to the URA claims Plaintiffs assert as part of their federal law claims.

The Court declines to exercise supplemental jurisdiction over Plaintiffs' claims asserted under the Ohio Constitution and state law. 28 U.S.C. § 1367(c)(3).

### III. Conclusion

For all the reasons set forth above, the Court GRANTS Defendant/Respondent's Motion for Summary Judgment and DENIES Plaintiffs/Relators' Motion for Summary Judgment as to Plaintiffs/Relators' federal law claims and dismisses those claims with prejudice. The Court declines to exercise supplemental jurisdiction over the Plaintiffs/Relators' remaining state law claims and REMANDS this case back to state court.

Date: May 28, 2021　　　　　　　　　　　　　　　　*s/ Jonathan Greenberg*
　　　　　　　　　　　　　　　　　　　　　　　　Jonathan D. Greenberg
　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge